IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

B# ON DEMAND LLC,

       Plaintiff;

  v.

SPOTIFY TECHNOLOGY S.A.,
SPOTIFY AB and SPOTIFY USA, INC.,

      Defendants.

Civil Action No. 19-2077-RGA

<u>MEMORANDUM OPINION</u>

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; John S. Kyle, KYLE HARRIS LLP, San Diego, CA, Attorneys for Plaintiff.

Jack B. Blumenfeld, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Stefani E. Shanberg, Jennifer J. Schmidt, Madeleine E. Gully, MORRISON & FOERSTER LLP, San Francisco, CA, Attorneys for Defendants.

September 8, 2020

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Defendants' motion to dismiss. (D.I. 15). I have reviewed the Parties'

briefing. (D.I. 16, 19, 21). For the following reasons, I grant Defendants' motion and dismiss

Plaintiff's complaint, with leave to amend.

## I.     BACKGROUND

Plaintiff filed this patent infringement lawsuit on November 11, 2019. Plaintiff alleges

Defendants infringe all claims of U.S. Patent Nos. 7,877,412 ("the '412 patent"), 8,832,149 ("the

'149 patent"), 9,031,985 ("the '985 patent"), 9,330,242 ("the '242 patent"); 9,553,880 ("the '880

patent"), and 9,900,323 ("the '323 patent") (collectively, "the Asserted Patents"). The Asserted

Patents, all of which share the same specification (D.I. 156 at 1), are somewhat whimsically

entitled as "Rechargeable Media Distribution and Play System," "Method for Subscription

Media On-Demand," "More Subscription Media On Demand," "Even More Subscription Media

on Demand," "Subscription Media On Demand VII," and "Subscription Media on Demand VIII

(Offline Mode)."  The patents claim transmitting encrypted digital media files to a user and

limiting play based on authorization levels.

Plaintiff alleges that Defendants directly, indirectly, and willfully infringe "at least one

claim of the [Asserted Patents]" via "Spotify Premium Service, Spotify Premium for Family

Service, and Spotify Premium on PlayStation™ Service." (D.I. 1 at ¶¶ 50, 60, 70, 80, 90, 100).

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)

for failure to state a claim upon which relief can be granted. (D.I. 15). Defendants argue that

none of the claims in the Asserted Patents claim patent-eligible subject matter, and thus all

claims are invalid under 35 U.S.C. § 101. (D.I. 16). Defendants also contend that Plaintiff has

failed to plead facts sufficient to state a plausible claim of direct, willful, induced, or contributory infringement. (*Id.*).

## II.    LEGAL STANDARD

Defendants move to dismiss the pending action pursuant to Rule 12(b)(6), which permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). Dismissal under Rule 12(b)(6) is only appropriate if the complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). However, "a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017).

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court recognizes three categories of subject matter that are not eligible for patents—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012). "[A] process is

not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 71 (internal quotation marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 72 (emphasis omitted).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 573 U.S. at 217. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'— *i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (quoting *Bilski*, 561 U.S. at 610-11). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.*

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski*, 561 U.S. at 602. Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See*

*Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017),

*cert. denied*, 138 S. Ct. 2621 (2018). In these situations, claim construction is not required to

conduct a § 101 analysis. *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1374 (Fed. Cir.

2016) ("[C]laim construction is not an inviolable prerequisite to a validity determination under §

101." (brackets in original, internal citations and quotations omitted)). The Federal Circuit has

held that the district court is not required individually to address claims not asserted or identified

by the non-moving party, so long as the court identifies a representative claim and "all the claims

are substantially similar and linked to the same abstract idea." *Content Extraction &*

*Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)

(internal quotation marks omitted).

## III.     DISCUSSION

### A.  Whether Claim 2 Of The '412 Patent Is Representative

In its Opening Brief, Defendants suggest, without expressly stating, that claim 2 of the

'412 patent is a representative claim.  (D.I. 16 at 11).  I do not have enough information to find

Claim 2 of the '412 patent representative of all 345 claims of the Asserted Patents for the

purpose of determining whether the claims recite patent-eligible subject matter. The system and

method claims of the '412 patent generally recite elements of an invention relating to "playing

digital files on a software program" that can "(1) transmit encrypted digital media files to a user

over a communications network, (2) decrypt digital media files, (3) authorize the user to play

digital media files, and (4) limit the play of digital media files." (*Id*.). Independent Claim 2 of the

'412 patent recites:

> A system for playing digital files on a software program embodied on a computer-
> readable medium comprising:

> means for delivering to a user over a communication network at least two different digital files capable of being played by the user on the software program in accordance with the parameters of a license,
>
> wherein the license authorizes the playing of the at least two different digital files on the software program,
>
> the digital files can be played on the software program without maintaining a persistent connection to the communications network,
>
> the digital files are encoded in a manner limiting play on the software program in the absence of the license,
>
> the manner in which the digital files is encoded is a proprietary format, the license enables the decoding of the digital files for play, and
>
> to the extent the playing of the digital files on the software program exceeds the parameters of the license, the playing is limited.

The '412 patent contains twelve independent claims. *See id.* at cls. 1-3, 24-26, 49-54. Defendants assert that the dependent claims of the '412 patent "add the same set of limitations to the independent claims relating to the nature of the communications network (claims 4, 27); the nature of the digital files (claims 5, 6, 28, 29, 47, 48, 55); the nature of the software program (claims 7-10, 30-33); the nature of the user device (claims 14, 37); the manner of encryption (claims 15, 16, 38, 39, 56); the basis of authorization (claims 11-13, 34-36); and the manner of limiting play of the digital files (claims 17-23, 40-46)." (D.I. 16 at 4). Based on the limited argument that Defendants make, I am unable to find that the other claims of the '412 patent are all "substantially similar and linked to the same abstract idea," such that Claim 2 is representative of the other asserted claims of the patent. *See Content Extraction*, 776 F.3d at 1348.

Defendants assert that Claim 2 of the '412 patent is representative of every claim in the other five Asserted Patents. (D.I. 21 at 1). Each of the six Asserted Patents claims priority to the same application, filed on January 18, 2000. The patents share the same specification and

6

abstract. But Defendants have not made a clear showing that Claim 2 of the '412 patent is representative of the remaining 345 claims at issue here.

The '149 patent claims recite the same four fundamental elements as the '412 patent in the context of a "subscription system for playing media files on a user device," but certain manners of limiting play of the digital files are incorporated into the independent claims of the '149 patent rather than the dependent claims. *See* '149 patent at cl. 1. Claim 1 of the '149 patent recites:

> A subscription system for playing media files on a user device comprising:
>
>> a file access authorization, which authorization enables a user to play at least two different media files on a player program on the user device,
>>
>> wherein at least a portion of at least one of the media files resides on the user device at the time of play,
>>
>> the authorization is limited by at least one predetermined play parameter, and
>>
>> to the extent the playing of at least one of the media files on the user device exceeds at least one predetermined play parameter, the playing is limited by means comprising at least one of:
>>
>>> preventing play of at least a portion of at least one of the media files,
>>>
>>> interfering with play of at least a portion of at least one of the media files,
>>>
>>> denying play of at least a portion of at least one of the media files,
>>>
>>> interrupting the continuity of play of at least a portion of at least one of the media files,
>>>
>>> disabling access to at least a portion of at least one of the media files,
>>>
>>> denying access to at least a portion of the player program
>>>
>>> disabling at least a portion of the functionality of the player program, or
>>>
>>> disabling at least a portion of the functionality of the user device.

*Id.*

The '985 patent claims also recite elements of a "subscription system for playing media files on a user device," but the nature of the digital files and user device and certain manners of

7

limiting play of the digital files are incorporated into the independent claims of the '985 patent

rather than the dependent claims. *See* '985 patent at cl. 1. Claim 1 of the '985 patent recites:

A subscription system for playing media files on a user device comprising:

at least one of the following:

a first file access authorization, which authorization enables a user to play at least two different media files on a player program on the user device,

at least two different media files, which media files are capable of being played by a user on a player program on the user device in accordance with a first file access authorization, or

a player program, which player program is configured to play at least two different media files on a user device in accordance with a first file access authorization;

wherein the at least two media files are selected by the user;

the at least two media files are transmitted to the user device over a communications network;

each of the at least two media files comprises at least one of moving images, music, spoken words, or application software;

neither of the at least two media files nor its content is related to, a copy of, or customarily distributed with the other of the at least two media files or its content, except that a common filename extension, file format, medium, or genre does not in and of itself render the two files or their respective content related;

at least a portion of each of the at least two media files is at least one of encrypted or copy protected for at least some period of time;

the user device comprises memory, at least a portion of which memory is primary;

with respect to each of the at least two media files:

at least a portion resides in the primary memory on the user device at the time of play, and

the player program is not configured to enable storage of the file in non-volatile memory on the user device;

play of the at least two media files is limited by at least one predetermined play parameter;

the at least one predetermined play parameter is configured to remain in effect for at least two consecutive logon sessions; and

to the extent the playing of the at least two media files exceeds the at least one predetermined play parameter, the playing is limited in a manner comprising at least one of:

terminating, interrupting, or denying play of at least a portion of the at least two media files,

interrupting or denying access to at least a portion of the at least two media files, or

terminating, disabling, ceasing, inhibiting, interrupting, or rendering inaccessible at least a portion of the functionality of the player program.

*Id.*

The '242 patent, the '880 patent, and the '323 patent recite the same elements of a "system for on-demand distribution of data files over a communications network," but the nature of the digital files and certain bases and forms of authorization are incorporated into the independent claims of the patents rather than the dependent claims. *See* '242 patent at cl. 1; '880 patent at cl. 1; '323 patent at cl. 1. The independent claims of all three patents claim additional limitations related to the components of the server computer and a stored catalog that references the digital media files. *See* '242 patent; '880 patent; '323 patent.

Claim 1 of the '242 patent recites:

A system for on-demand distribution of data files over a communications network, comprising:

a memory;

a processor in data communication with the memory;

a network interface in data communication with the processor;

at least one catalog stored in the memory;

wherein the at least one catalog is configured to reference at least a first data file and a second data file, wherein the first data file comprises at least a portion of a first work, wherein the second data file comprises at least a portion of a second work, wherein the first work is different from the second

9

work, wherein each of the first data file and the second data file is capable of transmission to a user device over the communications network, wherein each of the first data file and the second data file is selectable by a user from the at least one catalog, and wherein either:

the first data file and the second data file each comprises at least one musical recording, or

the first data file and the second data file each comprises at least one moving image; and

wherein the processor is configured to:

require at least a first authorization in order to permit at least one of transmission or play of at least a portion of each of the first data file and the second data file, wherein the first authorization is configured to expire if a predetermined act is not performed by or on behalf of the user on or before a predetermined date, which predetermined date comprises at least one of a predetermined calendar date or passage of a predetermined period of time, wherein the first authorization is usable across at least two logon sessions prior to the predetermined date, and wherein the at least one of transmission or play of at least a portion of each of the first data file and the second data file is at least one of limited or inhibited after the expiration of the first authorization;

require at least a second authorization in order to permit play of at least a portion of at least one of the first data file or the second data file, wherein the second authorization comprises decryption data; and

generate at least one instruction to transmit to the user device at least a portion of at least one of the first data file or the second data file.

'242 patent at cl. 1.

Claim 1 of the '880 patent recites:

A system for on-demand distribution of works over a communications network, comprising:

a memory;

a processor in data communication with the memory;

a network interface in data communication with the processor;

at least one catalog stored in the memory;

wherein the at least one catalog is configured to reference at least a first work and a second work, wherein the first work is different from the second work, wherein each of the first work and the second work is selectable by a user from the at least

10

one catalog, wherein a first data file comprises at least a portion of the first work, wherein a second data file comprises at least a portion of the second work, wherein the first data file is different from the second data file, wherein each of the first data file and the second data file is capable of transmission to a user device over the communications network, wherein each of the first data file and the second data file is capable of play on a software player associated with the user device, wherein each of the first data file and the second data file is encrypted prior to play, wherein at least a portion of the first data file is configured to reside in main memory on the user device at the time of play of the first data file, wherein at least a portion of the second data file is configured to reside in main memory on the user device at the time of play of the second data file, and wherein either:

the first data file and the second data file each comprises at least one musical recording, or

the first data file and the second data file each comprises at least one moving image; and

wherein the processor is configured to

require a first authorization, which first authorization is configured to enable at least one of transmission or play of at least a portion of each of the first data file and the second data file, wherein the first authorization is configured to expire with respect to both the first data file and the second data file if at least one predetermined act is not performed by or on behalf of the user within a predetermined period of time, wherein the at least one predetermined act and the predetermined period of time are the same for both the first data file and the second data file, wherein the first authorization is usable across at least two logon sessions within the predetermined period of time, and wherein the at least one of transmission or play of at least a portion of each of the first data file and the second data file is configured to be at least one of limited or inhibited after the expiration of the first authorization.

'880 patent at cl. 1.

Claim 1 of the '323 patent recites:

A distribution system for data files comprising:

an electronic communication network configured for connection to both a service facility and a user facility, wherein the service facility comprises a server computer, wherein the server computer comprises an operator interface, wherein the operator interface comprises a service memory and a service modem interface configured to connect to the network through an available service communication line, wherein the user facility comprises a user screen display, a user memory, and a user modem interface, wherein the user facility comprises at least one audio speaker, wherein the user facility comprises a

media interface for driving the speaker, wherein at least a portion of the user memory is non-volatile, wherein the user facility is configured to interact with a library server program over the network, wherein the user memory comprises a web browser configured to access at least two data files made available by the service facility, wherein the at least two data files are encrypted, wherein the at least two data files are saved in the non-volatile user memory, and wherein the user memory comprises a media player program configured for conditionally playing the at least two received data files, and wherein the player program is configured to permit the user to play the at least two received data files until a composite authorization for play is expended; and

a system memory, wherein at least a portion of the system memory is non-volatile, wherein the system memory comprises a web server program, wherein the system memory comprises the library server program, wherein the library server program is configured for accessing a mass data storage, wherein the mass data storage comprises a library of the at least two data files, wherein the system memory comprises an accession program configured to access the at least two data files, wherein the accession program comprises a receive data step by which the at least two data files are received in computer-readable form, wherein the accession program is capable of generating a catalog, wherein the catalog is capable of periodic updating in a maintain catalog step to include new data files, if any, wherein the catalog is capable of being saved in the mass data storage, wherein the user facility is configured to access a library server, wherein the user facility is configured to access a network web page in an activate web page step, wherein the network web page is capable of receiving a request from the user facility to deliver a listing of the catalog to the user facility, wherein the distribution system comprises a test catalog request step and a return catalog step to deliver the listing of the catalog to the user facility if requested from the user facility, wherein the network web page is capable of receiving a request from the user facility to deliver the at least two data files, wherein the network web page is capable of receiving a request from the user facility to establish a new user account, after which control is passed to a get user data step in which the user provides identification data and establishes user authorization, wherein the network web page is capable of receiving a user logon.

'323 patent at cl. 1.

Defendants only clearly and affirmatively state that Claim 2 of the '412 patent is representative of the remaining 345 claims for the first time in its reply brief. (D.I. 21 at 1). Defendants note that the remaining claims of the '412 patent add limitations "relating to the nature of the communications network," "the nature of the digital files," "the nature of software

program," "the nature of the user device," "the manner of encryption," "the basis of

authorization," and "the manner of limiting play of the digital files." (D.I. 16 at 4). These

additional limitations create questions of fact regarding the scope of the claims. *See Phillips v.

AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("the presence of a dependent claim that adds

a particular limitation gives rise to a presumption that the limitation in question is not present in

the independent claim").  Defendants do not persuade me based on their conclusory arguments

that each of the remaining 345 claims are "substantially similar" to Claim 2.

### B.  Patent Eligible Subject Matter

Defendants argue that the claims of the Asserted Patents rely on generic computer

components performing their routine operations to achieve one abstract concept: limiting access

to distributed media based on predetermined rules. (D.I. 16 at 11). For the reasons that follow, I

will invalidate Claim 2 of the '412 patent.

### 1.        Claim 2 of the '412 Patent Claims an Abstract Idea

Defendants argue that the claims fail at step one of the *Alice* framework because they

claim the abstract idea of limiting access to distributed media based on predetermined rules. (D.I.

16 at 11). Plaintiff argues that Claim 2 of the '412 patent contains a means-plus-function

limitation rendering the claim a "concrete and definite practical application," and therefore not

abstract. (D.I. 19 at 8, 11).

Plaintiff argues that the claim's first limitation is in means-plus-function format: "means

for delivering to a user over a communications network at least two different digital files capable

of being played by the user on the software player in accordance with the parameters of a

license." (*Id.* at 8; citing '412 patent at cl. 1). Plaintiff contends that the claim recites a "physical

structure in the form of various computing components of a computer network <u>and</u> discloses

algorithmic structures in the form of flow charts and prose that create a new, special purpose machine." (D.I. 19 at 9).

The '412 patent's specification discloses physical structures, for example:

(i)     a service facility that can be implemented as a server computer;
(ii)    an electronic communications network;
(iii)   customer computers;
(iv)    connections to the communications network by communications lines, which can be telephone utility, cable, fiber, radio, cellular telephone lines; and
(v)     where the server or service computer includes an operator interface having a screen, keyboard, mouse, memory (some of which is non-volatile), and a modem interface.

('412 patent at 3:52-4:5). These are generic descriptions of computer components and functions that do not turn an abstract idea into a patentable invention. *Content Extraction*, 776 F.3d at 1347-48.  Plaintiff asserts that the disclosed structure renders the claim a concrete and definite practical application that is not abstract because it neither preempts the field nor automates rules that were previously enforced manually. (D.I. 19 at 11). But each of these physical structures, including a "server," "electronic communications network," "connections to the communications network," are generic computer components, none of which improve the way a computer system functions. *See Alice*, 573 U.S. at 222.

Plaintiff also asserts that the specification discloses algorithms, including,

A distribution process including, for example:
(i)     an accession program that maintains a library of recordings;
(ii)    the accession program is programmed to include a receive data step in which bibliographic data and, optionally, full records are received in computer-readable form, such as on CD;
(iii)   alternatively, the data can be transmitted over a communications network to the accession program;
(iv)    if the data comprise complete works, they are encrypted in an encrypt and store step;
(v)     a catalog is maintained in a catalog store step for including new works [5:6-7];

14

(vi)    the encrypt and store step is skipped where only bibliographic data are received;

(vii)    once the catalog reflects the current status of the data file, the library server program is entered for activating a network web page by which users can communicate with the distribution system in an activate web page step.

(D.I. 19 at 10; citing '412 patent at 4:56-5:23).

The specification further discloses:

(i)    passing control to a do transaction step;

(ii)    encrypting the selected data files, preferably in a manner that permits decryption only by the particular customer (for example by public-private key encryption);

(iii)    transmitting the encrypted files over the network in an output files step;

(iv)    new customers receive appropriate codes and/or software (the player program) for enabling playback of the files;

(v)    as further security against unauthorized file access, new keys or coding elements can be added or substituted to both transmitted media files or the software player each month;

(vi)    running periodic integrity checks to uncover absence of current decryption keys/coding elements;

(vii)    the exemplary configuration of the distribution process includes in the transaction step a counterpart of the test local step for each catalog selection for branching to a set link step in which URL is derived or copied from the catalog data for that selection;

(viii)    typically, the URL is to an encrypted full record of the selections that is maintained at one of the vendor facilities being accessible via the computer network;

(ix)    the transaction step is completed when the program loop is done processing the customer's library selections, by determining in an identify player step which if any counterpart of the player program is to be transmitted to the customer; and

(x)    the determination of which media player is to be transmitted is based on an interrogation of the customer flag in a cflag step, which can contain the identity of the customer's default media player, as well as the customer's authorization level, and whether the customer is a new customer who has not received a counterpart of the media player

*See* '412 patent at 6:65-8:11.

Plaintiff appears to invoke the "special purpose computer" test from *In re Alappat*, 33

F.3d 1526 (Fed. Cir. 1994), to argue that the claim discloses algorithmic structures in the form of

flow charts and prose that create a "new, special-purpose machine." (D.I. 19 at 9). But the rationale that an otherwise ineligible algorithm could be made patent-eligible by adding a generic computer to the claim for the "special purpose" of executing the algorithm is not good law. *See EON Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616, 622-23 (Fed. Cir. 2015) ("*Alappat* has been superseded by *Bilski* . . . and *Alice.*").

Plaintiff also attempts to draw support for its argument from *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), likening its generic algorithms to the rules at issue in that case. The claimed invention in *McRO* recited "specific rules" or algorithms for a computer to "achieve an improved technological result" in computer animation, redirecting the animator's process from subjective determinations to specific, limited mathematical rules. *Id*. at 1314-16. The Federal Circuit concluded that the claimed invention went "beyond merely organizing existing information into a new form or carrying out a fundamental economic practice," and instead used specific rules to render information in a specific format used to create desired results. *Id.* at 1315 (internal quotation marks, brackets, and citations omitted). Here, the claim does not provide technical details, rules, or algorithms explaining how to limit access to distributed media based on predetermined rules.  Plaintiff's algorithms "merely invoke generic processes and machinery" for handling data that use a computer, but do not improve the way the computer functions. *Id.*

The "algorithmic structures" cited by Plaintiff point to conventional computer functions for handling data, like "maintain[ing]," "encrypting," "transmitting," "receiv[ing]," and "test[ing]." ('412 patent at 4:56-5:23, 6:65-8:11). Courts have found these conventional computer functions insufficient to render a claim non-abstract. *See Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017) ("[R]eceiving transmitted data over a

network and displaying it to a user merely implicates purely conventional activities that are the 'most basic functions of a computer.'"). Nor do Plaintiff's algorithms contain rules that improve a technological process, as it argues. (D.I. 19 at 11). Instead, Plaintiff's algorithms "merely invoke generic processes and machinery" for handling data, which do not render the claims non-abstract. *McRO*, 837 F.3d at 1314.

Plaintiff also contends that because a "server computer" interacts with a "library server program" and an "accession program maintains a library of recordings," Claim 2 is not "just a functional claim using conventional technological components," but is instead "directed to a particular way of using a conventional application server." (D.I. 19 at 9, 13; citing *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 898 (Fed. Cir. 2019)). Plaintiff asserts that the proprietary-encoding limitations in the claim, which describe digital files encoded in a manner limiting play depending on the presence of a license, "claim a particular improvement in how to limit access to distributed media based on predetermined rules." (D.I. 19 at 13; '412 patent at 14:10-14). The portion of the claim to which Plaintiff refers recites:

> the digital files are encoded in a manner limiting play on the software program in the absence of the license, the manner in which the digital files is encoded is a proprietary format, the license enables the decoding of the digital files for play.

('412 patent at 14:10-14). Plaintiff also points to "methods of record keeping" and "setting of cookies on customers' computers" as indicating a disclosure of specific steps that accomplish a desired result, rather than simply a recitation of the result. (D.I. 19 at 13; '412 patent at 8:30-32; citing *Uniloc*, 772 F. App'x at 898).

At step one, we consider whether the "focus of the claims is on [a] specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish LLC v. Microsoft Corp.*, 822

F.3d 1327, 1335-36 (Fed Cir. 2016). In *Uniloc*, the Court found that the claim at issue was "not just a functional claim using conventional technological components." 772 F. App'x at 898. "Instead, the claim is directed to a particular way of using a conventional application server to nevertheless allow on-demand installation of an application incorporating preferences from two different sources by adding the application manager and configuration manager as additions to each application." *Id.* The Court found that the two specific added components did not "merely fulfill their ordinary roles." *Id.* at 899. Instead, their use together created a "different" way of achieving the claimed improvement. *Id.* Similarly, in *Enfish*, the Federal Circuit held that a claim to a self-referential table was not directed to an abstract idea because the table embodied an improvement in the way computers operate. 822 F.3d at 1335-36. In reaching this conclusion, the Court noted that the table provided increased flexibility, faster search times, and smaller memory requirements over conventional databases. *Id.* at 1337.

The claim here is distinguished from those that were found non-abstract in *Uniloc* because the various recited components appear to fulfill their ordinary roles. Functions such as "maintaining a library of recordings," "methods of record keeping," and "setting cookies" are generic processes performed on conventional computer machinery. The claim does not demonstrate an improvement in the way computers operate. *See Enfish*, 822 F.3d at 1335-37. Nor do the specific components used together provide a different way of using their ordinary roles to achieve the desired result. *See Uniloc*, 772 F. App'x at 898. Reference to a "proprietary format" as the manner in which the digital files are encoded suggests that the format itself does not matter, or is not of significance in establishing the limitations of the claim. Pointing to a "proprietary format" essentially points to a black box, which does nothing to demonstrate how the claims are encoded such that they represent an improvement in the technology or innovation

18

over conventional functionality. Plaintiff's argument that this method of encoding conveys a specific improvement in the technology is thus unpersuasive. Rather than being focused on a specific means or method that improves the relevant technology, Claim 2 is instead "directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO,* 837 F.3d at 1314.

Essentially, Claim 2 of the '412 patent enforces the terms of a license agreement. Plaintiff concedes, "The Patents-in-Suit remove once-necessary human interventions . . . ." (D.I. 1 at ¶ 30). That the patent places this process on conventional computer devices does not confer patent-eligibility. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("Claims directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible."); *see also Bancorp. Servs., LLC v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1279 (Fed. Cir. 2012) (claim ineligible even if "the computer . . . performs more efficiently what could otherwise be accomplished manually"). Nor does the claim offer any "particular improvement in *how* this is done" that might render it eligible for protection under §101. *See Uniloc*, 772 F. App'x at 897.

The computer processes recited in Claim 2 of the '412 patent are similar to those that the Federal Circuit previously has found to be abstract.

First, Claim 2 recites a list of steps for automatically imposing constraints on the use of "digital files" transmitted over a "communications network." Claims directed to data access are commonly deemed abstract. *See Ultramercial*, 772 F.3d at 716 (finding abstract claims directed to distributing copyrighted materials over the internet); *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (finding abstract claims directed to "tracking financial transactions to determine whether they exceed a pre-set spending limit");

*Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 982-83 (Fed. Cir. 2017) (finding abstract claims directed to conditioning and controlling access to data based on payment").

Second, the claim's playing of licensed digital files is directed to delivering media to user devices. *See* '412 patent at cl. 2. The Federal Circuit has also found claims directed to data transmission to be abstract. *See Affinity Labs of Texas, LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) (finding abstract claims directed to "delivering user-selected media content to portable devices"); *Two-Way Media*, 874 F.3d at 1340 (finding abstract content streaming claims directed to monitoring delivery of real-time information and measuring the delivery of real-time information). Therefore, the functionality of delivering media to user devices is abstract.

Third, Plaintiff lists various computer processes in support of its argument that the patents do not claim an abstract idea, including forms of digitizing, encrypting and decrypting, transmitting, receiving, storing, and processing data. (D.I. 19 at 14-15). The Federal Circuit has held that collecting "1) data, 2) recognizing certain data within the collected data set, 3) and storing that recognized data in a memory" is an abstract idea. *Content Extraction*, 776 F.3d at 1347. This Court has also held that "decryption" is an abstract idea. *Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 333 (D. Del. 2015).

As a whole, Claim 2 of the '412 patent is similar to the representative claim of the '766 patent asserted in *Uniloc*. 772 F. App'x at 901. There, the claim was directed to a license management method that indicated a user's authorization to access an application. *Id.* The task claimed was simply to "provid[e] an unavailability indication . . . or an availability indication," based on "at least one of a user identity based policy, an administrator policy override definition[,] or a user policy override definition." *Id.* The Court held that this is an abstract idea.

20

As in *Uniloc*, the claim here does "not go beyond requiring the collection, analysis, and display of available information." *See Elec. Pwr. Grp.*, 830 F.3d at 1351. Essentially, a user's access to digital files is tested against the user's license authorization, with a resulting display based on the limits of that authorization. As in *Uniloc*, this is not an improvement in network architecture—it is the use of a computer as a tool to process information. *See* 722 F. App'x at 901. The claim is directed to a license management method, which is an abstract idea. *See id.* at 902.

In *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295 (Fed. Cir. 2019), the Federal Circuit held claims drawn to a method of hierarchical computer network monitoring to be patent-eligible. The *SRI* claims recited a series of steps, including "deploying" network monitors, which detect "suspicious network activity based on analysis of network traffic data," and generate and integrate "reports of . . . suspicious activity." *Id.* at 1301. At step one, the Court held that the claims were not directed to an abstract idea because they were "necessarily rooted in computer technology in order to solve a specific problem in the realm of computer networks." *Id.* at 1303. The claims in that case were not using a computer as a tool but, instead, recited a specific technique for improving computer network security. The Court relied on statements in the specification that the claimed invention purported to solve weaknesses in the prior art by providing a framework for recognition of global threats to interdomain connectivity. The *SRI* claims recited general steps for network monitoring with minimal detail present in the claim limitations themselves.

Here, the invention purports to solve a technological problem by limiting access to distributed media based on predetermined rules. But, unlike *SRI*, neither the claim nor its specification present a technological solution to this problem beyond the application of

conventional licensing in the context of computers. Nor does the patent explain how the elements recited in the claim refer to specific technological features functioning together to provide an improvement in licensing and distribution. The alleged functional improvements in efficiency arise wholly out of the conventional advantages of using networked computers as tools, not a particular improvement in the computer or network. *See Uniloc*, 772 F. App'x at 900.

I do not see anything in the patent or Claim 2 that indicates an improvement upon a technological process. The claim is wholly functional and does not include the "specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *See id.* Nor does the specification explain how the technological processes work. The claims use a wholly generic computer system to obtain functional results of limiting access to distributed media based on predetermined rules with no technical detail describing how to achieve those results. In sum, the Asserted Patents claim an abstract idea.

## 2. Claim 2 of the '412 Patent Contains No Inventive Concept

In its complaint, Plaintiff states that at the time the inventions were conceived, Digital Rights Management systems had certain limitations: media distribution took place predominantly through physical media or broadcast distribution systems and there were no "all-you-can-eat" systems for the on-demand streaming of digital content. (D.I. 1 at ¶¶ 20-23). "Single authorization of multiple files, which authorization is usable over multiple sessions, was novel and nonobvious." (*Id.* at ¶ 29). Plaintiff contends that the inventor,

> solved technical problems of secure access to, transmission of, and play of digital media files in a non-physical format over a network having a distributed architecture. Unauthorized duplication could be managed by limited authorizations that would expire periodically if the user did not maintain the required conditions for secure access to, transmission of, and play of digital files.

(*Id*. at ¶ 28). For digital media files streamed to the user over high-speed Internet, secure access, transmission, and play could be achieved with buffered streaming, in which the media file is downloaded to and played from the Random Access Memory of the user's device; and if the digital media file is not capable of being saved to the user's storage media, access, transmission, and play could be discontinued through expiration of the user's access authorization. (*Id.*). For users with slower or intermittent Internet connections, digital media files could be saved to the user's storage media for later playback, and such later playback could require authorization in the form of a digital key that would expire if not renewed or replaced. (*Id.*). Plaintiff argues that as such, the patent claims contain inventive concepts. (D.I. 19 at 16).

Accepting this characterization of the prior art as true, as I must, Claim 2 of the '412 patent still fails to provide a technological solution to the purported problem. In ordinary language, Claim 2 describes a system for playing digital files on a software program on a user's computer wherein: (1) another computer can send two or more digital files to the user's computer, the files being subject to limits set forth in a license; (2) the license authorizes the playing of the digital files; (3) the files can be played even if the sending computer is not continuously connected to the user's computer; and (4) the files are encoded in a proprietary format so the files do not play beyond the limits of the license, which can decode the proprietary format. *See* '412 patent at cl. 2. The claims provide only a functional description of such elements but do not explain how to encode a file or to prevent unauthorized play. For example, the claims provide that "the manner in which the files is encoded is a proprietary format," and "to the extent the playing of the digital files on the software program exceeds the parameters of the license, the playing is limited." (*Id.*) This is distinguishable from *Enfish*, for example, in which the efficiency improvements arose out of claimed unique improvements in computer

23

functionality, rather than improvements inherent in the use of conventional computer components as tools to perform conventional functions. *See* 822 F.3d at 1339.

As an ordered combination, the claim limitations "add nothing that is not already present when the elements are considered separately," but rather elaborate on known, conventional steps that must be performed to access media based on the presence of a license. *See Apple Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016). Nothing in the claim provides the necessary inventive concept to render the claim patent-eligible under § 101. *See FairWarning IP*, 839 F.3d at 1097; *Content Extraction*, 776 F.3d at 1349 ("[A]ll of the additional limitations in the claims cited in [patentee]'s appeal brief recite well-known, routine, and conventional functions of scanners and computers. Thus, while these claims may have a narrower scope than the representative claims, no claim contains an 'inventive concept' that transforms the corresponding claim into a patent-eligible application of the otherwise ineligible abstract idea."). Thus, there is nothing unconventional about the "ordered combination" that is not merely the sum of the parts. *See in re TLI Commc'ns Patent Lit. v. AV Auto., LLC*, 823 F.3d 607, 615 (Fed. Cir. 2016) (holding that where "recited physical components behave exactly as expected according to their ordinary use," they do not constitute an inventive concept).

The Federal Circuit has repeatedly held that implementation via conventional computer components does not add an inventive concept. *See Ultramercial*, 772 F.3d at 715-16 (an abstract idea does not become patent-eligible when "the claims simply instruct the practitioner to implement the abstract idea with routine, conventional activity," such as through a "general purpose computer"); *see also Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1374-75 (Fed. Cir. 2017) ("interface" and "memory" not inventive); *Credit Acceptance*

*Corp. v. Westlake Servs.*, 859 F.3d 1044, 1056 (Fed. Cir. 2017) ("user terminal" not inventive);
*Content Extraction*, 776 F.3d at 1347-48 ("memory" not inventive).

 Here, Claim 2 describes generic computer and network components and their operations.
The complaint states, "[T]he disclosed embodiments in the Patents-in-Suit are hardware-agnostic
such that consumers could access and play content on any number of devices." (D.I. 1 at ¶ 31).
As in *Ultramercial*, implementing the abstract idea of limiting access to distributed media based
on predetermined rules via a "general purpose computer" does not provide an inventive concept.
772 F.3d at 715-16. Nor is the fact that the claim recites various technological components
sufficient to confer patentability where the claims do not offer an improvement in the functioning
of that technology. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014)
(finding that where the computer functionality is generic, "The claims' invocation of computers
adds no inventive concept.").

 Claim 2 of the '412 patent recites only generic components that the specification admits
perform well-known and conventional functions. Connections to the "communications network"
can be "telephone utility lines. . . . satellite, cable, fiber, radio, cellular telephone, in any
combination." *Id.* at 3:63-65. The claimed "media files" are "electronic files that are typically
digital in form." *Id.* at 4:32-33. For audio, such files can be "compressed in the known MP3
format." *Id.* at 4:46-47.

 None of the dependent claims add an inventive concept such that the abstract idea
described would be rendered patent-eligible. For example, the claimed "catalog" listing can be
"open[ed] and display[ed] . . . in a conventional manner" once transmitted. *Id.* at 5:35-36. User
information is provided in a "conventional manner" to obtain authorization. *Id.* at 5:59-60. The
decryption of the selected "data files" is performed "in a manner that permits decryption only by

the particular customer, such as by public-private key encryption or other suitable means." *Id.* at 7:1-3.

The underlying "physical structures" that Plaintiff identifies in support of its argument that the asserted claims contain an inventive concept are nothing more than generic computer components. *See Content Extraction*, 776 F.3d at 1347-48; *Intellectual Ventures I LLC v. Mfrs. and Traders Trust Co.*, 76 F. Supp. 3d 536, 547 (D. Del. 2014) ("that the system of claim 1 at bar recites a 'means for storing and a 'means for presenting transaction summary data,' and claim 19 recites a 'means for listing,' does not change the analysis, as only generic computers and computer components are disclosed in the specification.").

Plaintiff's complaint asserts that the inventor of the patented technology solved "problems and inefficiencies associated with secure access to, transmission of, and distribution of digital media over distributed computer networks." (D.I. 1 at ¶ 42). But aside from applying the longstanding practice of licensing in the context of computers, in what new or improved way do the patents claim that this is being done? I do not find an inventive concept in the idea of license-based limited distribution and play of digital media. The patent does not explain how this process is carried out in a way that does not merely employ the conventional functions of computers. In essence, the '412 patent takes the concept of licensing and applies it to generic technological components.

In sum, none of the claimed elements, taken individually or as an ordered combination, provide the required inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 218. While there may not have been any "all-you-can-eat" systems for on-demand streaming of digital content at the time, providing users unlimited access to content streaming is more comparable to

"an improvement in the success or monetization of tracking users," rather than "an improvement in networking or computer functionality." *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 889 (Fed. Cir. 2019). Neither the patent nor the complaint states how any improvement is accomplished. And none of these alleged improvements "enables a computer . . . to do things it could not do before." *Finjan*, 879 F.3d at 1305. The claim contains no inventive concept because it is not directed to "an improvement in computers as tools," but instead asserts an "independently abstract idea[] that use[s] computers as tools." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). Thus, I find that Claim 2 of the '412 patent claims the abstract idea of limiting access to distributed media based on predetermined rules, implemented on conventional, well-known hardware, adding no inventive concept.

### B.  Sufficiency of the Pleading under *Iqbal/Twombly*

Defendants contend that Plaintiff's complaint is deficient under the pleading standard set forth in *Iqbal/Twombly* because it fails to provide notice as to who or what allegedly infringes. (D.I. 16 at 17). Defendants also assert that Plaintiff fails to plead knowledge of the Asserted Patents or the facts necessary to support a finding of willful, induced, or contributory infringement. (*Id.* at 18-20). The allegations of direct infringement are sufficient.  *See Disc Disease Sols., Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018).  Allegations of indirect infringement and willfulness are insufficient at a minimum[1] because there is no factual content in the complaint (*see, e.g.*, D.I. 1 at ¶ 55) that alleges any non-conclusory basis for pre-suit knowledge of any of the patents-in-suit.  Thus, all claims other than direct infringement are

---

[1] I do not now need to address other arguments raised by Defendants in connection with indirect and willful infringement.  If Plaintiff chooses to amend its complaint, it should not assume that its current allegations are sufficient on the arguments that I have not addressed.

dismissed with leave to amend, as Plaintiff's briefing suggests that it can rectify the lack of notice pleading deficiency. (*See* D.I. 19 at 18).

### C.  Leave to Amend

Plaintiff requests leave to amend if the Court finds the complaint inadequate. (D.I. 19 at 20). A district court should freely give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). Leave to amend is therefore granted.

### IV.    CONCLUSION

For the reasons discussed, I will grant Defendants' motion, and dismiss Plaintiff's complaint, with leave to amend. An accompanying order will be entered.